RENDERED:  MARCH 25, 2022; 10:00 A.M.
TO BE PUBLISHED
MODIFIED:  APRIL 1, 2022; 10:00 A.M.

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0411-MR

RICKY G. HUNT                                                                           APPELLANT

APPEAL FROM LOGAN CIRCUIT COURT
v.          HONORABLE JILL E. CLARK, SPECIAL JUDGE
ACTION NOS. 16-CR-00148 AND 17-CR-00038

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND K. THOMPSON, JUDGES.

LAMBERT, JUDGE:  Ricky G. Hunt appeals from the Logan Circuit Court's

denial of his Kentucky Rule of Criminal Procedure (RCr) 11.42 post-conviction

motion.  We reverse and remand.

## Factual and Procedural History

To understand fully the parties' arguments, we must set forth the unusual procedural and factual history of this case in greater detail than we typically deem necessary. In June 2016, Hunt entered the residence of his former girlfriend without her permission, took her cell phone (which he later threw away), forced her into a vehicle, and drove away with her. Eventually, she was able to lock herself in a store's restroom. The authorities were called, and Hunt was later indicted for, among other things, burglary in the second degree and unlawful imprisonment in the first degree. Case No. 16-CR-00148 (16-148). In early February 2017, Hunt was also charged via information with theft by unlawful taking and tampering with physical evidence. Case No. 17-CR-00038 (17-38).

On the same date the information was issued, Hunt entered into a plea agreement with the Commonwealth for the charges in both cases.[1] The gist of the

---

[1] Though not raised by the Commonwealth, we note that an order issued by the trial court regarding Hunt's plea, which was also signed by Hunt, his attorney, and the Commonwealth's Attorney, states that Hunt "does hereby waive any rights which he might have to hereafter apply for shock probation, probation of any other form, or conditional release, including the filing of [RCr] 11.42 motions and other post-conviction motions." Record (R.) at 51 in 16-148; R. at 14 in 17-38. That waiver, if valid, would have barred Hunt from filing this RCr 11.42 motion and, in turn, would have effectively meant the trial court need not have considered it on the merits.

Surprisingly, the trial court did not mention the waiver in the order denying Hunt's RCr 11.42 motion. The parties also have not discussed the waiver in their briefs. We may affirm a trial court on alternate grounds supported by the record. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014). However, under longstanding precedent, "an attorney for a party on appeal may waive an assignment of error either expressly or impliedly." *Allen v. O.K. Mobile Home Sales, Inc.*, 570 S.W.2d 660, 662 (Ky. App. 1978). A plea agreement is a contract and subject to interpretation via typical contract principles. *See,*

agreement was that Hunt would receive five-years' imprisonment for four Class D

felonies, with all four sentences to run consecutively for a twenty-year sentence.

However, in lieu of imprisonment, the agreement called for Hunt to be

granted pretrial diversion for five years.[2]  Among the conditions of Hunt's

---

*e.g.*, *Hammond v. Commonwealth*, 569 S.W.3d 404, 409 (Ky. 2019).  And Kentucky precedent
has recognized for many decades that "[a] party may waive or relinquish rights to which he is
entitled under a contract . . . ."  *Stamper v. Ford's Adm'x*, 260 S.W.2d 942, 943 (Ky. 1953).

Here, the waiver provision would benefit only the Commonwealth.  But the
Commonwealth has not relied upon it.  Consequently, at least for purposes of this appeal, we
deem the Commonwealth to have waived the waiver.  *See, e.g.*, *Tobin v. Commonwealth*, 622
S.W.3d 663, 668 (Ky. App. 2021) ("The Commonwealth asserts the motion was not signed or
verified by the movant, as required by RCr 11.42(2), warranting a summary dismissal of her
motion, and we should affirm the circuit court on those grounds alone.  However, Tobin
correctly points out that this argument, touching upon particular case jurisdiction, was not raised
in the circuit court and was thus waived.").  Thus, we express no opinion on the viability of the
waiver, though we note that our Supreme Court has held that including waivers of the right to
seek collateral relief in plea agreements is an ethical violation.  *United States, ex rel. U.S.
Attorneys ex rel. Eastern, Western Districts of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d 136,
157-58 (Ky. 2014) ("Attorneys practicing in this Commonwealth, whether state or federal, must
comply with our ethics rules.  Accordingly, either defense counsel or prosecutors inserting into
plea agreements waivers of collateral attack, including IAC [ineffective assistance of counsel],
violates our Rules of Professional Conduct.").

[2] As our Supreme Court has explained:

> Pretrial diversion is an interruption of prosecution, which allows a defendant to
> avoid a criminal conviction on his record if he successfully completes diversion.
> As a condition of pretrial diversion, the defendant is required to enter a [*North
> Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)] plea or a
> plea of guilty.  If the defendant successfully completes the provisions of the
> pretrial diversion agreement, the charges against the defendant shall be listed as
> dismissed-diverted and shall not constitute a criminal conviction.  But if the
> defendant fails to complete the provisions of the pretrial diversion agreement, the
> trial court voids the agreement, and the Commonwealth decides to proceed on the
> guilty plea, then KRS [Kentucky Revised Statutes] 533.256 contemplates that the
> trial court will enter final judgment in accordance with the defendant's guilty
> plea.

diversion was a requirement that he "complete teen challenge[,]" a rehabilitation program. Specifically, the order releasing Hunt into treatment stated that he had to enter and complete the Teen Challenge of Greater Cleveland, which is located in Perry, Ohio.[3] Because Hunt was going to an out-of-state treatment facility, the form order further provided in relevant part: "In the event, for any reason, the defendant is discharged from the program, he or she shall immediately return to the county of conviction and shall report in person to this court at the criminal motion hour next following his discharge." R. at 54 in 16-148; R. at 18 in 17-38.

Although the trial court approved the agreement and granted diversion to Hunt, the court seemed somewhat uneasy doing so. After discussing the seriousness of the offenses, the court curiously stated: "I'm gonna tell you, be as honest with you as I can be. If you mess this up and I get to revoke you, I'm going to be relieved so don't, please don't do that. I don't want anybody to get hurt." Video Record (VR), 2/2/17 at 4:12:45 *et seq.*

---

*Commonwealth v. Derringer*, 386 S.W.3d 123, 126 (Ky. 2012) (internal quotation marks, footnotes, and citations omitted).

[3] According to a letter in the record, Teen Challenge describes itself as "a Christian Growth and Development Center which provides a residential program for men (18 years and older) who want help in overcoming life-controlling problems such as, but not limited to, drug and alcohol abuse." R. at 23 in 17-38. It is unclear why a Kentucky court ordered Hunt, a Kentucky resident, to undergo alcohol-related treatment at a facility located over 500 miles away. In fact, at a later hearing on the Commonwealth's motion to void Hunt's diversion, neither Hunt nor the trial court could explain why Hunt had been sent to that faraway facility.

In early April 2017, the Commonwealth filed a motion to revoke[4] (*i.e.*, void) Hunt's diversion because he had failed to complete the Teen Challenge program. Attached to that motion was a letter Teen Challenge of Greater Cleveland had sent to the trial court judge stating that, about seventeen days after he entered the program, Hunt:

> was found AWOL down the road by three of our residential staff. Mr. Hunt refused the staff's request to return with them to the Teen Challenge Program. Just before 12:00 AM, Mr. Hunt walked back onto our Teen Challenge property in Perry, Ohio.
>
> Mr. Hunt's mother, Betty Hunt, was contacted and she refused to purchase him a bus ticket back to Kentucky. Mr. Hunt requested to be dropped off at Flying J's truck stop in Ashtabula, Ohio with all his possessions.

R. at 61 in 16-148; R. at 22 in 17-38. Hunt did not appear for the next criminal motion hour following his departure from Teen Challenge.

A hearing on the Commonwealth's motion to void Hunt's diversion was held in early May 2017. The video record of that proceeding provided to us appears to be incomplete since it abruptly begins with Hunt being asked by his counsel if Hunt would be willing to go to a different treatment facility, to which Hunt responds affirmatively. Hunt's counsel then states, "maybe not this one, with

---

[4] Strictly speaking, pretrial diversion is voided, not revoked. *See* KRS 533.256. But, as a practical matter, the two terms are functionally synonymous.

all the problems you've described, but another similar treatment facility." VR

5/4/17 at 4:37:52. No record of Hunt's having described "all the problems" has

been provided to us. Soon thereafter the court asked Hunt: "When you say there

were drugs everywhere, what do you mean by that?" *Id.* at 4:38:50 *et seq.* We

have been provided no testimony by Hunt about there being "drugs everywhere."

In sum, it appears that we have only been provided with a portion of Hunt's

testimony.[5]

In the portion of the video provided to us, the Commonwealth asked

Hunt no questions. But the court engaged in a colloquy with Hunt. Hunt described

other Teen Challenge participants' having searched for drugs during work details

and a staffer's having experienced mental health issues which resulted in the

staffer's being taken to a hospital. But when asked how those matters had

impacted him, Hunt only vaguely said he did not like being around that type of

behavior. Later, despite having agreed to attend Teen Challenge in his diversion

agreement, Hunt stated that he only drank "a little" and thought other people were

more suited for treatment than he was. *Id.* at 4:42:07 *et seq.*

---

[5] The partial testimony of Hunt is all that has been provided to us from this hearing. We have not been provided **any** evidence presented by the Commonwealth or any additional evidence which may have been presented by Hunt. An appellant bears the responsibility to ensure we receive the complete record, and we must presume that the missing portions of the record support the trial court's decision. *See, e.g.*, *Brannock v. Brannock*, 598 S.W.3d 91, 95 (Ky. App. 2019).

After Hunt finished testifying, the trial court immediately stated that it was going to "revoke" Hunt's diversion and set the matter for final sentencing in three weeks, remarking "sounds like it was all one big mistake." *Id.* at 4:43:27 *et seq.* The court made no additional findings nor offered any further explanations. Surprisingly, neither the Commonwealth nor Hunt raised any objections or asked for additional findings. The court's subsequent written order voiding Hunt's diversion did not add additional findings as it consisted only of handwritten remarks on a fill-in-the-blank form merely stating that Hunt had violated the terms of his diversion by failing to complete drug treatment and not having subsequently thereafter appeared in court.

Three weeks later at his sentencing, Hunt again stated that Teen Challenge staff members had been sent to "mental wards" and "one guy" had attempted suicide and people were "running around on all kinds of medication." VR, 5/25/17 at 2:16:28 *et seq.* When the court asked Hunt whether people had been misbehaving around him, Hunt responded "no, but they could've." *Id.* at 2:17:32 *et seq.* Unpersuaded, the court then twice described Hunt's reasons for leaving Teen Challenge as "baloney." *Id.* at 2:17:58 *et seq.*

Hunt's counsel asked the court to consider letting Hunt attend another Teen Challenge program, if one could be found which Hunt could attend for free. By contrast, the Commonwealth asked the court to sentence Hunt to twenty-years'

imprisonment, as per the diversion agreement, arguing that Hunt had exhibited "violent tendencies." *Id.* at 2:20:00.

The court remarked that Hunt "seemed like a nice fella," but then commented on Hunt's "alcohol problem" and criminal history, which the court said included some fourth-degree assault and driving under the influence charges. *Id.* at 2:20:19 *et seq.* The court expressed a belief that Hunt became violent after consuming alcohol and opined that "we can't fix that . . . we can't fix mean and that puts people at risk." *Id.* at 2:20:59 *et seq.* The court commented that it was not inclined to allow a person who walks away from a treatment program and does not appear voluntarily in court to re-enter treatment, especially people who have a "violent tint" to their history. *Id.* at 2:21:41 *et seq.* Again, the court said Hunt "seemed like a real nice fella" but then remarked that "a lot of folks are just real nice sober but they're just not good when they're drunk. And I wish we could fix it but we can't." *Id.* at 2:22:11 *et seq.* Ultimately, the court sentenced Hunt to a total of twenty-years' imprisonment, as per the Commonwealth's recommendation. Hunt did not file an appeal.

Later in 2017, the court denied Hunt's motion for shock probation. In November 2017, Hunt sought relief under Kentucky Rule of Civil Procedure (CR) 60.02, alleging he "is simply serving too much time for the nature of the crime he

committed . . . ." R. at 89 in 16-148. The court denied the CR 60.02 motion in January 2018. Hunt did not appeal.

At this point, the record becomes convoluted. In June 2019, Hunt filed a petition for a writ of mandamus with this Court, asking us to direct the Logan Circuit Court to rule on an RCr 11.42 motion which Hunt alleged he had submitted in March 2019.[6] But the record of neither underlying case contained any such motion. Consequently, in September 2019, a panel of this Court denied Hunt's request for a writ because "[t]here does not appear to be a pending RCr 11.42 motion, and there is no record that one has been filed in Logan Circuit Court Case No. 16-CR-00148 or 17-CR-00038." R. at 103 in 16-148; R. at 69 in 17-38; Appeal No. 2019-CA-000984-OA.

Nonetheless, the very next item in the record of both cases is an order denying Hunt's RCr 11.42 motion signed by Special Judge Jill E. Clark in October 2019, but not entered until December 2019.[7] It is unclear how Special Judge Clark had obtained a motion which had not been filed by the clerk's office, a topic to which we shall return later in this Opinion.

---

[6] This document appears only in the record of Case No. 17-CR-38, probably because its caption refers to that case and, mistakenly, Case No. **17**-CR-148, not Case No. **16**-CR-148. *See* R. 59-62 in Case No. 17-CR-38.

[7] In 2019, Tyler Gill, the judge who granted, then later voided, Hunt's diversion retired. Special Judge Jill E. Clark denied Hunt's RCr 11.42 motion. Joe W. Hendricks, Jr., became Logan Circuit Judge in November 2019, after Judge Clark signed the order at issue but before it was entered.

The order's substantive discussion relevant to this appeal is the following three paragraphs:

> The only place in the Defendant's RCr 11.42 motion which describes the grounds for the challenge are [sic] found on Page 2 under argument one, bold heading: "Mr. Hunt was denied effective assistance of counsel and due process as required by the 6th and 14th amendments of the United States Constitution and Sections 2, 3, 11 and 14 of the Kentucky Constitution when his defense counsel did not protect his due process rights by failing to present applicable statutes and case law to the Court pertaining to Mr. Hunt's revocation hearing.

> The record of the revocation hearing reflects the Court complied with all the due process requirements of KRS 533.050. The evidence was clear the Defendant left treatment after 17 days. The Defendant did not report to Court from March 19, 2017 (date he left treatment) to April 19, 2017 (date he was served with bench warrant). The Defendant stated he did not need treatment.

> The allegations of ineffective assistance of counsel are not stated in the motion and are not found in the record. The Defendant failed to abide by the terms of the diversion.

R. at 107 in 16-148; R. at 73 in 17-38.

Meanwhile, since no order resolving his motion had been filed, Hunt again asked us to issue a writ of mandamus in November 2019, submitting a petition which was identical, or nearly so, to his previous one. Appeal No. 2019-CA-001650-OA. In late December 2019, the order denying Hunt's RCr 11.42 motion was entered by the Logan Circuit Court Clerk's Office. Thus, in February

2020, a panel of this Court denied as moot Hunt's second request for a writ. After the trial court granted his request to proceed *in forma pauperis*, Hunt filed this appeal from the order denying his RCr 11.42 motion.

Hunt asked us to appoint the Department of Public Advocacy (DPA) to represent him on appeal. We issued an order requiring Hunt to show cause why this appeal should not be dismissed due to his notice of appeal's having been untimely filed. Meanwhile, the Logan Circuit Clerk submitted its initial certification of the record on appeal. We then directed the DPA to be given the record so it could respond to the show cause order and ascertain whether it desired to represent Hunt on appeal. DPA submitted a response to the show cause order on Hunt's behalf which stated that Hunt had submitted his notice of appeal into the prison mail system in a timely manner but, for unknown reasons outside Hunt's control, it was not timely filed by the Logan Circuit Court Clerk's Office.

But a huge problem with the record remained: Hunt's RCr 11.42 motion was not in it. Thus, DPA filed a motion to supplement the record with a copy of that motion.

A panel of this Court held in early September 2020 that Hunt had shown sufficient cause to prevent the appeal from being dismissed and granted the DPA's motion to certify the record. Specifically, that order directed the Logan

-11-

Circuit Clerk's Office to certify a supplemental record which included Hunt's RCr 11.42 motion.

Soon thereafter, in September 2020, the Chief Deputy Clerk of the Logan Circuit Clerk's Office submitted a document stating that the clerk's office could not certify a record containing Hunt's motion because it had never received that document.[8]  Via the DPA, Hunt then asked us to either allow him to reconstruct the record or to order the Logan Circuit Court Clerk's Office to certify a supplemental record containing his RCr 11.42 motion.  Chief Judge Denise G. Clayton issued an order in December 2020 which gave Hunt fifteen days to file a motion to correct or supplement the record in the Logan Circuit Court.

Via the DPA, Hunt then filed a motion in the trial court to supplement the record with his RCr 11.42 motion.  The trial court granted that motion in January 2021.  Thereafter, Hunt's RCr 11.42 motion, lengthy supporting memorandum, and the exhibits thereto were filed by the Logan Circuit Clerk's

---

[8] An affidavit must generally be made on the affiant's personal knowledge.  *See, e.g.*, CR 56.05; 2A C.J.S. *Affidavits* § 46 (2022).  But the document submitted by the Chief Deputy Clerk, though titled an affidavit, contains speculation.  For example, it states that the RCr 11.42 motion "was probably mailed directly to the Judge's Office" and posits that Judge Gill had not ruled on it before retiring "[m]aybe because he thought he was receiving a copy and I would be processing and delivering [it] with the file."  Supplemental Record (Supp. R.) at 169 in 16-148; Supp. R. at 149 in 17-38.  Obviously, the affiant did not have personal knowledge of those hypotheses, as shown by the prominent usage of "probably" and "maybe."  The document also incorrectly states that the current Logan Circuit Court Judge, Judge Hendricks, "is the judge that ruled upon this motion . . . ."  *Id.*  As previously stated, and as shown in the caption of this opinion, Special Judge Clark ruled on Hunt's RCr 11.42 motion.  Moreover, the document incorrectly notes the year in which Judge Gill retired.

Office in both cases.  The Logan Circuit Clerk duly certified the supplemental record containing the motion and accompanying documents in January 2021.

Chief Judge Clayton then issued an order which, among other things, formally granted Hunt's motion to supplement the record with a copy of his RCr 11.42 motion and gave the DPA an additional sixty days to determine whether it wished to represent Hunt.  In March 2021, the DPA asked to be relieved as Hunt's counsel because it had concluded it was not an action which a reasonable person with adequate means would bring at his or her expense.  Thus, in April 2021, Chief Judge Clayton issued an order denying Hunt's request for appointed counsel and permitting the DPA to withdraw from further representing Hunt.

In May 2021, attorney Chris Hendricks[9] entered his appearance as retained counsel for Hunt.  Briefing[10] then commenced.  Due to extensions of time, briefing was not completed until January 2022.

---

[9] No party has argued that Attorney Hendricks is related to Judge Hendricks.

[10] We note that Hunt failed to attach the order from which he appeals as an appendix to his brief, despite CR 76.12(4)(c)(vii) requiring an appellant to "place the judgment, opinion, or order under review immediately after the appendix list so that it is most readily available to the court." We have elected to not impose sanctions but remind counsel that any future failure to comply scrupulously with CR 76.12 may result in the imposition of sanctions.

**Analysis**

*The Arguments*

The gist of Hunt's RCr 11.42 motion is that the trial court failed to make the requisite findings before voiding his diversion and his counsel was ineffective for not objecting to the lack of those findings. But before we may address that claim, we must address two antecedent arguments by the Commonwealth. First, arguing that the trial court may have received Hunt's RCr 11.42 motion but not the accompanying memorandum, the Commonwealth asks us to "vacate the order supplementing the record with Hunt's memorandum of law and summarily affirm." Appellee brief, p. 5. Second, the Commonwealth argues Hunt is not entitled to seek relief under RCr 11.42 because he is not attacking his sentence. We reject both arguments.

*We Decline to Remove Anything from the Supplemental Record*

We first address the Commonwealth's attack on the supplemental record certified to us by the Logan Circuit Court Clerk. We laid out the facts in more detail than usual to highlight the difficulties with, and uncertainties about, the record, including what Special Judge Clark had before her when she denied Hunt's RCr 11.42 motion. The Commonwealth speculates that Special Judge Clark received the short RCr 11.42 motion itself but not the lengthy accompanying memorandum. The presence of the supplemental memorandum is significant

-14-

because the actual motion is terse and devoid of detail, likely to a fatal degree, but the lengthy memorandum contains amply detailed arguments.

Simply put, neither we nor the Commonwealth can know whether Judge Gill, or Special Judge Clark, received the memorandum. The record does not answer that question, neither judge has submitted an affidavit or similar document stating what document(s) they received from Hunt, and the judge who ordered the supplemental record to be certified did not take office until after Special Judge Clark had signed the order denying Hunt's motion.

We recognize the "fundamental rule of appellate practice that after a final judgment has been rendered in the circuit court no additions to the record can be made of matters which were not before the trial court when the judgment was rendered." *Fortney v. Elliott's Adm'r*, 273 S.W.2d 51, 52 (Ky. 1954). The Commonwealth asserts that adding the memorandum to the record violates that rule. But, under these unique facts, we cannot accept the Commonwealth's invitation to simply presume, based on speculation, that Special Judge Clark did not receive the memorandum. In other words, there is nothing to show with certainty that the supplemental record before us contains items which were not before the court when Special Judge Clark denied Hunt's motion.

Given all the issues with the motion and the filing thereof, we decided that the trial court itself was in the best position to determine whether there should

be a supplemental record containing the motion and accompanying documents.

Judge Hendricks granted Hunt's motion to supplement the record, thereby ensuring

that the motion and supporting memorandum were placed in the supplemental

record. The Commonwealth obviously disagrees with Judge Hendricks's decision

but has cited no authority to show how, or why, it is erroneous. Under these facts,

we decline to disturb the supplemental record.

*Hunt Is Permitted to Seek Relief Pursuant to RCr 11.42*

In relevant part, RCr 11.42(2) requires a motion to "state specifically

the grounds on which the sentence is being challenged . . . ." Seizing on the word

"sentence," the Commonwealth contends that Hunt cannot seek relief under RCr

11.42 because he is not actually attacking his sentence.

When a defendant is granted pretrial diversion, he or she must enter a

guilty plea. But, unlike what happens in a typical criminal case, a defendant who

is granted diversion is not automatically sentenced pursuant to that guilty plea.

Instead, a defendant who has been granted diversion is *never* formally sentenced

unless, and until, the diversion is voided. *Derringer*, 386 S.W.3d at 126.[11]

---

[11] The fact that a defendant granted diversion is not actually sentenced unless the diversion is voided distinguishes this case from *Jackson v. Commonwealth*, 319 S.W.3d 343, 346 (Ky. 2010), upon which the Commonwealth heavily relies. In *Jackson*, our Supreme Court held that an order revoking probation is not a sentence because probation revocation is independent of the underlying conviction. Therefore, a defendant attacking a revocation order is not attacking his or her sentence. By contrast, there was no conviction, or resultant sentence, here until after Hunt's diversion was voided. Thus, attacking the order voiding the pretrial diversion is an attack upon an indispensable predicate of the sentence, not an attack upon a post-sentencing collateral order.

-16-

Hunt's main allegations are that the court failed to make the requisite findings at the hearing on whether to void his diversion and his counsel failed to object. That hearing was not a sentencing because the mere voiding of diversion does not impose a sentence – that occurs in a later proceeding. So, carrying the Commonwealth's theory to its logical conclusion, no defendant could seek RCr 11.42 relief for any alleged errors which occurred at the hearing on whether to void diversion because that hearing is not part of a defendant's sentence.

A defendant must enter a guilty or *Alford* plea to criminal charges in order to receive diversion, and a guilty plea is a critical stage of a criminal proceeding "during which the right to counsel attaches." *Commonwealth v. Tigue*, 459 S.W.3d 372, 384 (Ky. 2015). Similarly, it is beyond serious dispute that a hearing on whether diversion should be voided is a critical event at which a defendant has the right to counsel. And the right to counsel means the right to effective counsel. *Id.* Thus, a defendant is entitled to effective counsel during the diversion process.

So, a defendant who believes his or her counsel was ineffective during the hearing on whether to void diversion should have the ability to raise that argument. But, if not in an RCr 11.42 motion, how? The Commonwealth struggles to answer that basic question.

Hunt did not appeal from the sentence imposed after his diversion was voided. But, even if he had, claims of ineffective assistance of counsel generally may not be raised on direct appeal. *Humphrey v. Commonwealth*, 962 S.W.2d 870, 872 (Ky. 1998). So, Hunt could not have brought his ineffective assistance claims on direct appeal.

That leaves post-conviction collateral attacks as possible avenues for Hunt's claims – specifically, CR 60.02 or RCr 11.42. The Commonwealth seems to believe that Hunt could raise his claims only via CR 60.02. For the following reasons, we disagree.

Our Supreme Court has expressed a strong preference for ineffective assistance of counsel claims to be raised via RCr 11.42. *Furnish v. Commonwealth*, 95 S.W.3d 34, 52 (Ky. 2002) (holding that ineffective assistance of counsel claims "are not properly raised on direct appeal, but rather must proceed by way of a post-trial motion under RCr 11.42"). And a defendant generally may seek relief under CR 60.02 only **after** unsuccessfully seeking relief via RCr 11.42. *See, e.g.*, *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983) ("The structure provided in Kentucky for attacking the final judgment of a trial court in a criminal case is not haphazard and overlapping, but is organized and complete. That structure is set out in the rules related to direct appeals, in RCr 11.42, and *thereafter* in CR 60.02.").

-18-

Of course, Hunt already filed an unsuccessful CR 60.02 motion which did not allege any ineffective assistance of counsel claims. However, under *Gross*, it would not have been proper for him to include those claims in his CR 60.02 motion since he had not previously sought relief under RCr 11.42.

Our Supreme Court has emphasized that CR 60.02 relief is "available only to raise issues which cannot be raised in other proceedings." *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997). In other words, a defendant must raise via RCr 11.42 "any ground of which he is aware, or should be aware, during the period when the remedy is available to him" because "Civil Rule 60.02 is not intended merely as an additional opportunity to relitigate the same issues which could reasonably have been presented by direct appeal or RCr 11.42 proceedings." *Id.* (internal quotation marks and citations omitted).

Thus, under the Commonwealth's theory, Hunt is in an unwinnable procedural position. He could not raise the ineffective assistance of counsel claims on direct appeal. He could not raise the ineffective assistance of counsel claims in his previously filed CR 60.02 motion. He could not now, in the Commonwealth's view, properly raise the ineffective assistance of counsel claims in his RCr 11.42 motion. And, since it is generally improper for a defendant to submit successive CR 60.02 motions (*see, e.g.*, *Foley v. Commonwealth*, 425 S.W.3d 880, 884 (Ky. 2014)), he could not properly raise the claims in a later, second CR 60.02 motion.

In practical terms, the Commonwealth's position would deprive Hunt of the ability to bring his claims.

We decline to accept the Commonwealth's cramped reading of RCr 11.42. Hunt, having a right to effective counsel during the process in which the Commonwealth sought to void his diversion, must have the ability to raise ineffective assistance of counsel claims stemming from that process. Thus, given the lack of other available avenues, we conclude that Hunt should be allowed to raise his claims in this RCr 11.42 motion. Indeed, though the arguments are not the same as those raised by Hunt, we have issued at least one published opinion resolving on the merits an RCr 11.42 movant's claims that counsel was ineffective during the proceedings which led to the movant's diversion being voided. *See Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014).

*Standards of Review*

Having cleared the considerable procedural underbrush, we now turn to the merits of Hunt's claims. The standards of review employed in resolving ineffective assistance of counsel claims and an appeal from a trial court's denial of an RCr 11.42 motion are familiar:

> We review the trial court's denial of an RCr 11.42 motion for an abuse of discretion. An RCr 11.42 motion is limited to the issues that were not and could not be raised on direct appeal. In order to prevail on an ineffective assistance of counsel claim, a movant must show that his counsel's performance was deficient and

-20-

that but for the deficiency, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Courts must also examine counsel's conduct in light of professional norms based on a standard of reasonableness.

Pursuant to the holding in *Strickland*, *supra*, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

*Teague*, 428 S.W.3d at 633 (some citations omitted). If, as here, the trial court denies an 11.42 motion without holding a hearing, "appellate review is limited to whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Haley v. Commonwealth*, 586 S.W.3d 744, 750 (Ky. App. 2019) (internal quotation marks and citation omitted).

*Hunt's Claims Are Not Conclusively Refuted by the Record*

To determine whether Hunt's counsel was ineffective, we must first address what is supposed to occur during proceedings to void pretrial diversion. KRS 533.256(1) provides that, if a defendant fails to complete the terms of his or her diversion agreement, "the attorney for the Commonwealth may apply to the court for a hearing to determine whether or not the pretrial diversion agreement should be voided and the court should proceed on the defendant's plea of guilty in

-21-

accordance with the law." And KRS 533.256(2) provides that in determining "whether or not a pretrial diversion agreement should be voided, the court shall use the same criteria as for the revocation of probation, and the defendant shall have the same rights as he or she would if probation revocation was sought." Thus, KRS 533.256(2) is "an unqualified invocation of the criteria now found in KRS 439.3106[,]" the statute which governs probation revocation proceedings. *Richardson v. Commonwealth*, 494 S.W.3d 495, 499 (Ky. App. 2015).

In turn, KRS 439.3106 provides:

(1)  Supervised individuals shall be subject to:

(a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

Thus, to have properly voided Hunt's diversion, the trial court was required to make a finding that Hunt posed a significant risk to his victim or the community at large and that he cannot be appropriately managed in the community. *See, e.g.*, *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014); *Compise v.*

-22-

*Commonwealth*, 597 S.W.3d 175, 180 (Ky. App. 2020). The trial court made neither finding, nor did it expressly consider imposing lesser sanctions.

The Commonwealth argues the trial court made findings which are equivalent to the statutorily mandated findings. Although it is better practice to track the language of KRS 439.3106 when making findings, it is not inherently fatal for a court to use equivalent language in its findings. For example, we concluded that a trial court's statement that a person was a "danger to [the] public" was sufficiently akin to finding that the person was a significant risk to the community. *McClure v. Commonwealth*, 457 S.W.3d 728, 733 (Ky. App. 2015).

Here, the Commonwealth asserts that we "should construe" the trial court's statement that "we can't fix" Hunt's alcoholism "as a finding that Hunt cannot be appropriately managed in the community." Appellee brief, p. 14. But a statement that alcoholism cannot be "fixed" is not the equivalent of a statement that a person cannot be appropriately managed in the community.

First, the comment relied upon by the Commonwealth was made at Hunt's sentencing on May 25, 2017, not the May 4, 2017, hearing on the Commonwealth's motion to void Hunt's diversion. KRS 533.256(2) requires the court to make the findings at issue pursuant to "making a determination as to whether or not a pretrial diversion agreement should be voided . . . ." Obviously, by the time of sentencing the court had already determined that Hunt's diversion

-23-

would be voided.  Indeed, there could have been no sentencing if the trial court had not already voided Hunt's diversion.  Thus, the comments made by the trial court at sentencing cannot have pertained to "making a determination" to void Hunt's diversion.

Even if we were to consider the sentencing comments as pertaining to "making a determination" about whether to void Hunt's diversion, the comment relied upon by the Commonwealth is insufficient.  In the context in which the trial court used it, "fix" means "CURE . . . ." *Fix*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/fix (last visited Mar. 2, 2022).  We agree with the trial court that there is no ready cure, or fix, for alcoholism.  But saying a defendant has an incurable disease, such as alcoholism, bears no direct and undeniable correlation with whether the defendant may be managed appropriately in the community.  It is beyond rational dispute that there are many persons suffering from, and recovering from, alcohol-related conditions who nonetheless have not committed felonies and may be appropriately managed in their communities.  In short, we decline the Commonwealth's invitation to construe the court's statement that alcoholism cannot be "fixed" as the equivalent of a finding that Hunt cannot be appropriately managed in his community.

Turning to the requirement that the court make a finding that Hunt presented a significant risk to prior victims or the community at large, the

Commonwealth asks us to deem sufficient the trial court's statement that Hunt's behavior and alcoholism had placed "people at risk." Again, however, those comments were made at sentencing, so they were not made in determining whether to void Hunt's diversion. Moreover, KRS 439.3106 requires a court to find that a defendant placed his or her victim(s) and the community as a whole at a **significant** risk. The omission of the adjective "significant" in the trial court's statement is not insignificant. *See Compise*, 597 S.W.3d at 182-83 ("Instead, the circuit court's oral findings were that Compise's non-compliance with her probation officer was knowing and willful, Compise was a risk to reoffend because of her lack of accountability, and she was also a risk to the community based on her lack of accountability. The circuit court never made a finding that Compise was a *significant* risk. While the circuit court may have intended to make such a finding, it was never articulated . . . . Therefore, we vacate and remand for the circuit court to consider whether Compise's failure to abide by valid conditions of supervision constituted a significant risk to her prior victim or the community at large . . . .").

In sum, the Commonwealth's protestations to the contrary notwithstanding, the trial court failed to make either of the two statutorily mandated findings. And Hunt's counsel failed to object or ask for additional findings. Clearly, the diversion proceedings did not comply with the statutory

mandates.  The issue is whether that matters.  In other words, do the lack of findings and an objection thereto present "grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction[?]"  *Haley*, 586 S.W.3d at 750 (internal quotation marks and citation omitted).

In 2015, long before Hunt's diversion was voided, we made plain that trial courts were required to make findings under KRS 439.3106 before voiding a defendant's diversion.  *Richardson*, 494 S.W.3d at 498-99.  Yet Hunt's counsel remained silent when the trial court failed to make those findings.  Moreover, we have repeatedly issued published opinions deeming the lack of KRS 439.3106 findings to be an error so egregious as to constitute a palpable error.  *See, e.g.*, *Burnett v. Commonwealth*, 538 S.W.3d 322, 324-25 (Ky. App. 2017) (palpable error in failure to make findings under KRS 439.3106 when voiding diversion); *Lainhart v. Commonwealth*, 534 S.W.3d 234, 238 (Ky. App. 2017) (palpable error in failure to make findings under KRS 439.3106 when voiding diversion); *Walker v. Commonwealth*, 588 S.W.3d 453, 459 (Ky. App. 2019) (palpable error in failure to make findings under KRS 439.3106 when revoking probation); *Price v. Commonwealth*, 534 S.W.3d 805, 806 n.1 (Ky. App. 2017) (concluding defendant's counsel had preserved trial court's failure to make findings under KRS 439.3106 when voiding diversion but stating that the lack of findings would constitute palpable error if unpreserved).  At minimum, therefore, Hunt has made a

-26-

colorable claim that his counsel performed deficiently by inexplicably failing to object and request additional findings.

The issue of whether Hunt has made a colorable claim of prejudice is less clear. In fact, the parties have not cited, nor have we independently located, precedent discussing what constitutes prejudice when a movant seeks RCr 11.42 relief based upon counsel's not objecting to the trial court's failure to make findings under KRS 439.3106.[12]

In the context of ineffective assistance of counsel claims, prejudice exists "when the defendant has shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This reasonable probability is a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Searight*, 423 S.W.3d 226, 230 (Ky. 2014) (internal quotation marks, footnotes, and citations omitted).

On direct appeal, if a trial court has not made the findings required by KRS 439.3106, we do not examine the evidence to determine if it would have been sufficient to support those findings. *Price*, 534 S.W.3d at 807 ("Because the circuit court failed to make findings under both elements of KRS 439.3106(1), we may not review the sufficiency of the evidence for those findings."). Instead,

---

[12] The movant in *Teague* sought RCr 11.42 relief based upon allegedly ineffective counsel during the process to void the movant's diversion, but those allegations did not involve counsel's failure to object to insufficient findings. *Teague*, 428 S.W.3d at 632.

because the lack of findings is an obvious error, we summarily reverse and remand so the trial court may make the necessary findings. *Id.* at 807-08.

But the standards for receiving relief on direct appeal stemming from a palpable error and for relief on collateral review are not interchangeable. *See, e.g.*, *Ford v. Commonwealth*, 628 S.W.3d 147, 159-60 (Ky. 2021). In other words, we may not conclude that Hunt has shown prejudice solely because we would have reversed and remanded on direct appeal. *See, e.g.*, *Schooley v. Commonwealth*, 556 S.W.2d 912, 917 (Ky. App. 1977) ("There are errors which would require reversal on direct appeal but which do not justify vacating a judgment of conviction by a motion under RCr 11.42.").

It is uncontested that Hunt walked away from court-ordered treatment and failed to appear at the next criminal motion hour conducted by the Logan Circuit Court. But, as Hunt points out, he was not charged with a new criminal offense, did not fail any drug or alcohol test(s), and was not accused of contacting the victim of his crimes. And, of course, a defendant's diversion is not automatically and inevitably voided whenever he or she does not comply with each requirement of the diversion agreement.

In addition, the incomplete record before us does not contain any of the Commonwealth's proof or Hunt's complete testimony. Therefore, since we

cannot know the entire evidence presented to the trial court at the hearing,[13] we are at an extreme disadvantage in assessing whether there is a reasonable probability that the outcome would have been different if Hunt's counsel had objected and demanded the court make the requisite findings or had explicitly asked the court to impose a sanction short of incarceration.[14]

The trial court made extraneous comments at sentencing that it was generally disinclined to afford persons who walked away from treatment programs another chance to enter such programs. However, Hunt's counsel did not expressly ask the court to impose lesser sanctions, nor did the trial court expressly state that it had considered, but rejected, imposing lesser sanctions.[15] Of course,

_____

[13] Of course, it is an appellant's responsibility to ensure we have a complete record and we may presume missing portions of a record support a trial court's decision, but that presumption is blunted here due to the significant procedural difficulties and irregularities in obtaining the certified record.

[14] KRS 439.3106(1)(b), formerly codified as KRS 439.3106(2), provides for "[s]anctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community[.]" *See, e.g.*, *Burnett*, 538 S.W.3d at 325 (holding that "once the court has fully considered and made findings as to these elements [*i.e.*, the defendant is a significant risk and cannot be managed in the community], it should determine whether revocation or a lesser sanction is most appropriate, thus serving both the spirit of, and the intent behind, KRS 439.3106.").

[15] Hunt's counsel did ask the court to allow Hunt to attend another Teen Challenge program, but also remarked on how Hunt would need to be able to attend for free and counsel was unaware of any facilities which allowed men to receive free treatment. Hunt's counsel did not explicitly request that Hunt be allowed to attend any treatment facility the trial court deemed appropriate, nor did counsel expressly ask the court to impose sanctions less severe than the twenty-year sentence called for by the plea agreement.

the trial court was only required to consider lesser sanctions, not impose them. *McClure*, 457 S.W.3d at 732. And, again, by the time sentencing occurred, the court had already decided to void Hunt's diversion.

Reduced to its essence, this case involves a complete failure by the trial court to make findings required by KRS 533.256(2) and 439.3106(1) and a complete failure by Hunt's counsel to object (for reasons – strategic or otherwise – not apparent from the face of the record). Of course, it is uncontested that Hunt failed to comply with the terms of his diversion. But the question is whether the lack of findings and any objection thereto affected the outcome – *i.e.*, is there a reasonable probability that Hunt's diversion would not have been voided or that he would have received a less severe sanction absent the errors? In making that determination, we must remember that by enacting KRS 439.3106 the General Assembly expressed its intent that courts should not always incarcerate persons for minor probation or diversion violations. *Andrews*, 448 S.W.3d at 779.

Under these circumstances, neither we nor anyone else can know with certainty what the outcome of hypothetically perfect hearings regarding the Commonwealth's motion to void Hunt's diversion would have been. It is possible that the result would not have changed if both the trial court and Hunt's counsel had made all the required findings and arguments. But it is also possible that the trial court would have taken a different approach if it had been required to make

the necessary findings instead of voiding Hunt's probation and sentencing him to twenty-years' imprisonment.

In another diversion case, we recently remanded with instructions to make the necessary findings despite noting the presence of evidence which was clearly sufficient to support voiding diversion. *Compise*, 597 S.W.3d at 182 ("These instances of non-compliance were more than sufficient to justify revocation of pretrial diversion because a defendant who will not cooperate with the conditions of her supervision may indeed constitute a significant risk to the community at large and be unmanageable in the community."). Implicit in our conclusion was a belief that there was a reasonable probability that the trial court may have declined to void diversion, despite the evidence, if the court had been required to make the mandatory statutory findings. After all, if we did not believe that there was a reasonable probability that the outcome would have been different, it would have been pointless to reverse and remand the case in light of the strong evidence to support the trial court's decision.

Here, there likewise is adequate evidence of non-compliance to justify voiding Hunt's diversion. But the trial court's failure to consider the mandatory findings required by KRS 439.3106(1) means that there is a reasonable probability that the outcome would have been different if the court had considered the

requisite factors instead of, seemingly, automatically voiding Hunt's diversion and sending him to prison for twenty years.

We also note that the order denying Hunt's RCr 11.42 motion contains no citations to, or discussions of, KRS 533.256, KRS 439.3106, or any cases interpreting and applying either statute. Instead, the order cites to KRS 533.050, a statute regarding the arrest of a defendant on probation which has no direct relevance here. The order noted that Hunt had not complied with the terms of his diversion, which is true but wholly insufficient to resolve Hunt's allegations. It appears, therefore, that the trial court misconstrued the nature of Hunt's claims and the obligations imposed upon a trial court when voiding diversion. In sum, the trial court's order denying Hunt's RCr 11.42 motion does not engage meaningfully with the motion's allegations or the relevant law. As a consequence, our confidence in the outcome of these proceedings has been undermined. *Searight*, 423 S.W.3d at 230.

In conclusion, Hunt has presented claims which are not conclusively resolved by the record and which, if proven, would entitle him to relief. We cannot conclude that the trial court's failure to make the necessary findings and counsel's failure to object were meaningless because the result would not have changed. Therefore, we reverse the trial court's summary denial of Hunt's RCr 11.42 motion. On remand, the trial court may require the Commonwealth to file a

written response to Hunt's motion. The court shall hold a hearing to resolve any evidentiary concerns or discrepancies (such as why Hunt's counsel failed to object), after which it will issue a new order resolving Hunt's claims.

We do not intend to opine on the ultimate merits of Hunt's RCr 11.42 motion. Instead, we merely conclude that Hunt's claims cannot be properly resolved from the face of the record. If the court ultimately concludes that Hunt's claims of ineffective assistance of counsel are meritorious, it shall afford him relief. If the court concludes the claims are not meritorious, it shall issue a new order explaining its decision.

**Conclusion**

For the foregoing reasons, the order of the Logan Circuit Court denying Ricky G. Hunt's RCr 11.42 motion without conducting a hearing is REVERSED, and the case is REMANDED with instructions for further proceedings consistent with this Opinion.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Chris Hendricks
Murray, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky